**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Matthew C. Elfring, | : | Case No. 3:08-CV-1599 |
| Plaintiff, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423.  Pending are briefs filed by the parties (Docket Nos. 16 & 17).  For the reasons that follow, the Magistrate recommends that the Court affirm the decision of the Commissioner.

## I.  PROCEDURAL BACKGROUND

On October 22, 2003, Plaintiff filed an application for DIB alleging that he had been disabled since November 16, 2002 (Tr. 49-51).  Upon denial of the application, both initially and upon reconsideration, Plaintiff requested a hearing, *de novo*, before an Administrative Law Judge (ALJ) (Tr. 34-42).  At a hearing conducted on January 4, 2006 before ALJ John Pope, Plaintiff, represented by

counsel, Vocational Expert (VE) Dr. Joseph Havranek, and witness, Kelly Baer, appeared and testified (Tr. 245). The Appeals Council's denial of review became the final decision of the agency (Tr. 4-6).

Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's unfavorable decision (Docket No. 1). The Court ordered that the parties file briefs on the merits (Docket No. 12). This matter is now decisional.

## II.  JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## III.  FACTUAL BACKGROUND

**1.      Plaintiff's Testimony**

At the time of hearing, Plaintiff was 48 years of age, single, 5'10" tall and weighed 185 pounds (Tr. 251). He held a general equivalency degree (GED). Plaintiff was last employed as a laborer for a tree service until November 2002 or 2003 when he was laid off and not recalled (Tr. 252). Plaintiff's work history includes jobs as a laborer in a foundry, furniture store and lumber yard, groundskeeper at a golf course and a machine operator/crib attendant in a machine shop (Tr. 253).

Plaintiff attributed his inability to work to a lack of strength, seizures and bilateral carpal tunnel syndrome. Although he had not had a seizure during the thirty days preceding the hearing, Plaintiff's seizures were manifested by falling and fatigue (Tr. 254, 259, 271). Because of shooting pains in his hands as a result of carpal tunnel syndrome, Plaintiff was unable to grasp or lift (Tr. 255). His hands were numb almost daily (Tr. 267). Plaintiff had surgery on his left wrist approximately three years prior to the hearing (Tr. 257). Plaintiff was nervous "around a lot of people (Tr.265). He was embarrassed

about having seizures because he sometimes experienced bowel incontinence, physical sickness, sweatiness and feelings of panic (Tr. 273-274).

The medications taken by Plaintiff included an anti-epileptic drug and over the counter sinus, heartburn and allergy medications (Tr. 258). The side effects included abdominal pain, upset stomach and constant fatigue (Tr. 260, 270-271). Plaintiff required several days to "bounce back" after a seizure. He also experienced pain, fatigue and an inability to concentrate after a seizure (Tr. 268).

During a typical day, Plaintiff got up around 8:30 A.M. and ate a light breakfast (Tr. 261). Plaintiff was able to dress himself. Because of the uncertain onset of seizures, he only took a bath when someone was at home (Tr. 263). He spent a considerable amount of time watching television (Tr. 261, 263). He only occasionally ran the vacuum because his arms became tired after doing so (Tr. 267). Plaintiff sometimes assisted his roommate in preparing meals (Tr. 261- 263). After dinner, Plaintiff watched television until bedtime (Tr. 263). Because of the shakiness of his hands, Plaintiff only "dabbled" with building model cars (Tr. 264). He attempted to see his parents twice monthly (Tr. 265). Plaintiff had not driven in more than two years (Tr. 274).

Plaintiff estimated that he could lift a gallon of milk, sit and stand without difficulty; however, he was likely to experience a shortness of breath after walking (Tr. 269).

**2. Witness Testimony**

Kelly Baer testified that she and Plaintiff lived together for six years. During that time, she witnessed the majority of Plaintiff's seizures (Tr. 275-276). She estimated that Plaintiff had seizures six times yearly. The seizures incapacitated Plaintiff for up to three days (Tr. 280). After the seizures, he had difficulty remembering and/or identifying her or other familiar voices, often for as long as several hours (Tr. 275, 276).

Ms. Baer remembered that one occasion, Plaintiff had fallen onto the night stand, breaking the clock and knickknacks and blackening his eye (Tr. 276). She explained that Dr. Loomus had advised Plaintiff to not drive, climb ladders or take baths when alone (Tr. 277, 279). Working was not recommended because of the danger Plaintiff could pose to his co-workers and himself (Tr. 277-278).

### 3. VE Testimony

Within the Toledo region, Dr. Havranek opined that a person with Plaintiff's characteristics, limited to avoiding all exposure to hazards, climbing ropes, ladders or scaffolds and limited to doing simple repetitive tasks and only occasional contact with the public, could not perform Plaintiff's past relevant work characterized by medium to heavy labor (Tr. 282- 284). Plaintiff could, however, perform work requiring medium exertion such as a hand packager, wall cleaner and car washer. There were approximately 2,000 to 2,500, 500 to 750 and 750 to 1,000, such jobs, respectively, in this region (Tr. 284). In summary, there were approximately 300,000 unskilled, medium level jobs, 180,000 light level jobs and 15,000 sedentary level jobs (Tr. 285).

If Plaintiff's ability to handle and manipulate were limited to occasional use, all of the identified jobs would be eliminated from the pool of work that Plaintiff could perform (Tr. 285). Additionally, if Plaintiff's testimony were considered credible, there would be no jobs that Plaintiff could perform (Tr. 286)**.**

### IV. MEDICAL EVIDENCE

Dr. Gary Gerard, a necrologist, referred Plaintiff to Dr. Patrick Click, a chiropractor, for an electrodiagnostic study (Tr. 106). The study, conducted on November 20, 2000, showed bilateral carpal tunnel syndrome, greater on the left (Tr. 109). On March 16, 2001, Plaintiff underwent a left carpal tunnel release (Tr. 111, 114). Postoperative treatment included a multivitamin with B complex daily.

Plaintiff's hand showed improvement through April 19, 2001 (Tr. 111-113).

On February 15, 2002, Plaintiff was treated for possible loss of consciousness due to alcohol intoxication (Tr. 121). Plaintiff was admitted to the Fulton County Health Center on March 15, 2002 for complaints of seizures (Tr. 128). The treating physician also diagnosed Plaintiff with delirium tremens (Tr. 131). The results of the computed tomography (CT) scan of Plaintiff's head were normal (Tr. 132). He was released after two days of detoxification (Tr. 127).

Plaintiff was diagnosed with acute syncope and a possible seizure disorder on August 9, 2002 (Tr. 140, 144). Dr. Raj Bhatia ordered a Holter Monitor which showed only rare premature ventricular contractions and occasional episodes of sinus arrhythmia (Tr. 149). The results from the CT scan of Plaintiff's brain were normal. There was, however, evidence of spinal osteoarthritis (Tr. 148). It was noted during this hospital stay that Plaintiff had essential hypertension (Tr. 141).

On August 10, 2002, Dr. Charles Sheldon, a Doctor of Osteopathic medicine, opined that Plaintiff probably had epilepsy (Tr. 146). Plaintiff presented to St. Luke's Hospital on August 16, 2002 but left without treatment (Tr. 172). On the following day, Plaintiff experienced a reaction to medication and returned to St. Luke's Hospital (Tr. 231-235). The results from the electrocardiogram and CT scan were within normal limits (Tr. 163, 165). The results from the electroencephalogram conducted by Dr. E. Tomas Calderon on August 19, 2002 (Tr. 160) were within normal limits.

Results from the magnetic resonance imaging (MRI) test administered on September 11, 2002, showed no space occupying or enhancing lesions (Tr. 192).

On November 18, 2002, Dr. Mark G. Loomus monitored the level of anti-epileptic medication in Plaintiff's blood stream. He was adamant that Plaintiff's success was contingent upon taking medication and not consuming alcohol (Tr. 191).

Plaintiff was treated on January 10, 2003, for seizures/alcohol withdrawal (Tr. 173-175). X-rays of Plaintiff's chest showed no acute pulmonary difficulty. The CT scan of Plaintiff head showed mild atrophic changes (Tr. 178).

In October 2003, Dr. Loomus conducted a general overview of Plaintiff's condition. It was his opinion that Plaintiff was doing well with the prescribed anti-epileptic medication. While attempts were made to stabilize Plaintiff's condition, Dr. Loomus recommended that Plaintiff not drive (Tr. 188). He concluded, however, that Plaintiff's condition was unmanageable if he continued to drink alcohol (Tr. 184-185).

Dr. Jerome Zake conducted an evaluation on December 19, 2003, after which he diagnosed Plaintiff with an adjustment disorder, alcohol dependence in partial remission, uncontrolled seizure disorder and evidence of moderate symptoms or moderate difficulty in social, occupational, or school functioning (Tr. 201).

Dr. Bob Stinson, Psy. D., conducted a psychiatric review and determined that Plaintiff had an adjustment disorder and behavior changes associated with the regular use of substances that affect the central nervous system (Tr. 205, 210). In his opinion, Plaintiff was mildly restricted in performing activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace (Tr. 212).

On January 21, 2004, Dr. Gerald W. Klyop conducted a review of Plaintiff's residual functional capacity finding that Plaintiff should never climb using a ladder, rope or scaffold; otherwise, he had no exertional, manipulative, visual or communicative limitations (Tr. 218 -220).

In May 2004, Dr. Loomus monitored the level of anti-epileptic drug in Plaintiff's system by conducting a complete blood count, measuring liver function and blood alcohol levels as well as

conducting a urine toxicology screening (Tr. 225-226). Plaintiff had four nocturnal seizures from May 2004 to March 18, 2005; consequently, Dr. Loomus increased the dosage of anti-seizure medication (Tr. 223, 224).

Dr. Loomus concluded in January 2006, that many of Plaintiff's seizures were directly related to his consumption of alcohol. He noted that Plaintiff chose not to take his medication as prescribed choosing rather to spend his money on tobacco. Since Plaintiff was not seizure free, Dr. Loomus concluded that Plaintiff could not engage in employment that required driving or operating heavy machinery. His conclusion was influenced in large part by Plaintiff's inability to comply with medical recommendations (Tr. 242).

## V.  STANDARD FOR DISABILITY

To qualify for DIB, a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Act. 42 U. S. C. § 423 (Thomson Reuters/West 2009). "Disability" as defined in the Act, denotes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context)).

To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that result in death or can be expected to last for a period of twelve months and the impairment renders the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. § 423(d)(2) (Thomson Reuters/West 2009). Regardless of the actual or alleged onset of disability, the

claimant is entitled to benefits beginning with the first month covered by the application in which the claimant meets all of the other requirements for entitlement. 20 C. F. R. § 404.316 (Thomson Reuters/West 2009).

To determine disability, the Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (a)(4) (Thomson Reuters/West 2009). First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. 20 C.F.R. § 404.1520 (a)(4) (i) (Thomson Reuters/West 2009).

Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. 20 C.F.R. § 404.1520 (a)(4) (ii) (Thomson Reuters/West 2009).

Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments. 20 C.F.R. § 404.1520 (a)(4) (iii) (Thomson Reuters/West 2009). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520 (a)(4) (iii) (Thomson Reuters/West 2009).

Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. 20 C.F.R. § 404.1520 (a)(4) (iv) (Thomson Reuters/West 2009).

Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4) (v) (Thomson Reuters/West 2009).

During the first four steps, the claimant has the burden of proof. *Walters v. Commissioner of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997) (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)). This burden shifts to the Commissioner only at Step Five. *Id*.

## VI. ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2007.

2. Plaintiff had not engaged in substantial gainful activity since November 16, 2002, the alleged onset date of disability.

3. Plaintiff had severe impairments including a seizure disorder and an adjustment disorder with anxiety and depressed mood.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

5. Plaintiff had the residual functional capacity to perform sustained work activity at all exertional levels except that he must avoid exposure to hazards, he was never to climb ladders, ropes or scaffolds, he was limited to simple, repetitive tasks involving only occasional contact with the public.

6. Plaintiff was unable to perform any past relevant work.

7. Plaintiff, a "younger individual aged 45-49, with at least a high school education, the ability to communicate in English, the aforementioned residual functional capacity and work skills that were not readily transferrable, could perform work that existed in significant numbers in the national economy.

8. Plaintiff was not under a "disability," as defined in the Act, from November 16, 2002 through October 30, 2006.

(Tr. 13-21).

## VII.  STANDARD OF REVIEW

Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *Elam ex rel. Golay v. Commissioner of Social Security,* 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The decision must be affirmed if the ALJ's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.  'Substantial evidence' means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept. ' "  *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983) (*quoting Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Id.* (*citing Key, supra*, 109 F.3d at 273).

## VIII.  DISCUSSION

Plaintiff claims, in his pro se letter brief, that the ALJ properly considered the evidence before him but that the ALJ failed to receive "all of the information that was critical" to his case.   Plaintiff suggests that his counsel was ineffective in communicating with the ALJ.  He contends further  that the administrative record is incomplete, specifically, evidence regarding a thrombus was not in the record.  Consequently, the ALJ's ability to render an "impartial judgment" based upon the entire record was undermined (Docket No. 16).   The Magistrate construes the merits of Plaintiff's brief as a request for remand to the Commissioner with directions to incorporate new evidence in the record and to conduct another hearing.

Two separate sentences within the Regulations authorize remands to the Commissioner. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (2006) (*citing Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994)).  First, a district court may order a "sentence four" remand after reviewing the Commissioner's decision and entering a judgment, if it determines that a rehearing before the Commissioner is warranted in light of the court's ruling. *Id*. Alternatively, the district court may order a prejudgment "sentence six" remand, which provides a potential avenue for the relief sought by Plaintiff in this case: namely, the reopening of the administrative record so that the Commissioner may consider "new and material evidence that for good cause was not previously presented to" the Commissioner. *Id.* (*see Marshall v. Commissioner of Social Security*, 444 F.3d 837, 841 n. 2 (6th Cir. 2006).

The statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. *Id.* In particular, it must be shown (i) that the evidence at issue is both "new" and "material," and (ii) that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* (*citing* 42 U.S.C. § 405(g); *see also Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996)).  The party seeking a remand bears the burden of showing that these two requirements are met. *Id.* (*citing Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)).  "[E]vidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Id.* at 484 (internal quotation marks and citation omitted). Such evidence, in turn, is deemed "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Foster,* 279 F.3d at 357) (internal quotation marks and citation omitted)).

Upon review of the Commissioner's decision, the Magistrate finds that the determinations made

11

by the ALJ were based on substantial evidence. Plaintiff concedes this fact. Plaintiff fails to advance an argument that would warrant a rehearing before the Commissioner in a sentence four remand.

However, Plaintiff's claims would be consistent with a sentence six remand if he can comply with the prerequisites for consideration of new evidence. The Magistrate finds that a sentence six remand is not warranted in this case for two reasons. First, Plaintiff has not shown that his proposed additions to the record are either "new" or "material." Specifically, he has not provided additional medical evidence of a medically determinable impairment such as a thrombus or any other impairment not previously made a part of the record. The Magistrate is persuaded by the tenor of Plaintiff's brief that even if such evidence would alter the disposition of the disability claim if presented, the evidence existed at the time of hearing but was not obtained. Such evidence is not "new" evidence as contemplated under the Regulations.

Second, Plaintiff suggests that he had good cause for any deficiencies in the record. Specifically, his counsel failed to accurately represent him at the hearing. Plaintiff, however, had the burden of completing the record to the extent that he provided complete and detailed evidence sufficient to make a disability determination. *See Landsaw v. Secretary of Health and Human Services,* 803 F. 2d 211, 214 (6th Cir. 1986). The claimant is required to make every effort to ensure that all material evidence is received by the ALJ prior to the time of hearing. 20 C. F. R. § 404.935 (Thomson Reuters/West 2009). Plaintiff cannot rely on his counsel's purported poor performance at the hearing as good cause for his failure to provide a complete record of his medical impairments.

## VIV.  CONCLUSION

For these reasons, the Magistrate recommends that the Court affirm the decision of the Commissioner and terminate the referral to the Magistrate.


/s/ Vernelis K. Armstrong
United States Magistrate Judge


Date:   July 17, 2009

## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.